Good morning, Your Honors. May it please the Court, Nanette Cortese appearing on behalf of the appellant, Teresa Gibson. Your Honors, at this point in time, I would like to reserve three minutes for my rebuttal. Your Honors, the appellant respectfully submits that the District Court had it right the first time. There were genuine issues of material fact in this case that should have precluded the granting of summary judgment in favor of MGM Grand and allowed Teresa Gibson to proceed to a trial by jury on her claims that the to the E1 position and the denial of her promotions to the E2 and E3 positions were based on her gender. Your Honors, she was in a male-dominated profession. The record reflects that in the department there were 37 people of whom only three were women. This was a skilled trades position where she was seeking to improve and better herself first through a lateral transfer to the hotel position and then from there through promotions. So you repeatedly say or suggest that the two individuals involved had never promoted women, but the District Court has a, this is incorrect, with an exclamation point at page ID 1079 of its opinion. But then you continue to say that in your brief. The District Court was referring to, of course, Amy Winton. I wonder if you could respond to why that doesn't undercut the notion that Yes, thank you, Your Honor. And we do in our brief discuss why Amy Winton was not similarly situated. And I am turning to those pages, Your Honors. But our distinguishing of Amy Winton, she was a painter. She was not in the same classification as the plaintiff. Additionally, Your Honor, and thank you. Doesn't it undercut any notion? I mean, you made more of a categorical claim that these are false, isn't it? I mean, she might be distinguishable, but the categorical claim has to fail because of that example. Your Honor, and I believe we point this out in our brief, that in fact, Amy Winton, that it was a different decision maker who was responsible for Ms. Winton's promotion. But one of these two individuals, or two of them together, had also promoted women and had offered another woman a position and the female applicant, I believe, declined the position. Is that correct? Which would also, as Judge Murfis said, kind of cut against the notion that this was, that there were certain animus toward women, promoting women into certain positions. Well, and again, Your Honor, there was evidence in the record that the other promotions of women, that theirs were promotions where it was mandated by the collective bargaining agreement or negotiated between MGM and the union. That was not something that Valentine and Lewis had voluntarily, on their own, said, here's a woman candidate and we're going to promote her. That was something that was somewhat imposed upon them. So the statement does have support in the record. In our brief, we do cite to that support in the record that Valentine and Lewis, on their own, as decision makers on their own, had never taken it upon themselves to promote a woman. And, Your Honor, with, Your Honors, with respect to the various positions. Let's talk about those various positions, because in the, in the phase one position, where she'd been there, I believe, 16 years, 13 or 16 years, the interviewers made specific interview notes with respect to why she was apparently not as qualified as the person with less experience that they accepted for the position. And part of this has to do with the other person had been doing things in housekeeping. They had more customer contact where hers has been primarily at the casino. Why is that not relevant or why is that pretextual? It is, as initially found by the district court, Your Honor, there is sufficient evidence of pretext where, again, this is at the summary judgment stage. This is not at the jury trial stage. At the summary judgment stage, when one looks at the facts in the light most favorable to plaintiff, the fact that plaintiff had 16 years of experience. And, Your Honor, we do discuss in our brief some of the case law that talks about the fact that where you have decision makers that are employing subjective criteria, such as, well, we like the fact that Weldon had this experience in answering guest runs, or we like the fact that Weldon worked in this section of the hotel, that that type of subjective criteria, and interestingly enough, Your Honors, it should be noted that Valentine and Lewis, that their scores in each other, that this type of subjective criteria, Your Honor, it is easy for this type of subjective criteria or this type of subjective criteria can be used. That may be true, but in most promotions, aren't you going to have a certain degree of subjectivity? And are you arguing for simply a seniority-based promotion system? Is that what you're saying, that they should have adopted? No, we are not saying, Your Honor, that the collective bargaining agreement did not require a seniority-based system. However, Your Honor, as a significant piece of evidence, the collective bargaining agreement did provide that where qualifications were equal, seniority should have been looked at and considered in terms of the promotion. But even your client, didn't she, well, this was for the engineering two position, so I'm getting ahead of you, pardon me. Can I ask a, isn't it, I agree with you that the more subjective it is, the more concerning it is, but they did have one, I guess I would view it as objective, the idea that she hadn't been in the hotel rooms, and so she didn't have competence with, I don't know what really any of these mean, but didn't have competence with Bartech, Incom, and NXTV systems. I mean, I assume that has something to do with the TVs and the other technology in the hotel rooms. That strikes me as an objective distinction, that this individual who got the transfer, I don't know what it was, the promotion for him, he did have experience in those things. That seems like an objective criterion. Well, and again, it was not fully developed in the record exactly how much experience he had with those, and of the various qualifications that each candidate was required to have, how much weight was to be given to the Bartech, the technology, et cetera. There was evidence in the record that Ms. Gibson did spend some time working in hotel, in the hotel, that she would be called upon to do work in the hotel, and she did respond in her deposition when asked that question, that anyone who came into that position, that they would be called upon to work in those systems. And again, I think the concern by the District Court in the initial denying of the summary judgment, is again, how subjective criteria, as you said, Your Honor, can be used when you have somebody in a traditionally male dominated skilled trades field, who's trying to either break into a lateral position, a promotional decision, and how that subjective criteria can be used against her. And with the Court's indulgence, I'm going to take one moment just to take a sip of water. And particularly with the E1 position, it's striking that somebody with 16 years' experience, that someone with only 6 months' experience was found to be better qualified and placed into that position. What do you do with, I guess for the E2 position, just moving on, I guess, I don't know, the most relevant evidence it seems to me is your client's own deposition, where she suggested or she conceded that Weldon was more qualified than her for that position. How do you respond to that testimony? Well, and in fact, what she also said, Your Honor, in her testimony was that she was, that she performed all of the tasks of that position. That she had done everything with both the E2 and the E3, that she had done everything that the engineers in those positions did, that she did all of those jobs. She did the plumbing, she fixed the toilets, she did the pool. That that was one statement that she made taken out of context, but looking at her... How would you describe the context to help clarify it? Because it does seem like a pretty significant statement or a pretty significant concession that there was a reasonable basis to promote one individual over another. In addition to that, that was also the notion that the person who got the position, I believe, had engaged in additional training to enhance qualifications and she had not furthered her training or education in her desired field. So explain the context and then just talk about generally why it was not factual that he was more qualified. And again, Your Honor, with regards to the context on the Engineering 2, and we cite this in the record, we cite this in our brief, we relied on the initial district court opinion with the E2 position that Weldon had relatively minimal experience repairing guest room technology. He did not possess most of the certifications specified in the labor agreement as required for the E2, and the district court found based on that that there was genuine issues of material fact regarding whether awarding that position to Weldon was pretextual. And part of the way Weldon was able to get the experience of being in the hotel, that goes back to, and the district court found this to be significant, that goes back to the fact that he was awarded the lateral transfer, that initial E1 lateral transfer to the face position, that's what enabled him to get some of the experience in the hotel. I want you to quickly jump to the third one where it required a journeyman's license or some equivalent and she clearly didn't have that. So what's your case for why the decision in that case was pretextual or incorrect or why she should have been given that position? Well, and I think that goes to something that's really at the crux of this case, Your Honor, is what happened to Ms. Gibson in this case is where male employees did not meet all of the criteria, for example, not possessing a journeyman's license, not possessing or checking every box of every skill that was sought, not being an MGM internal candidate, where male candidates did not check every box or meet every criteria. They were still, in the case of Marcus Weldon and ultimately the gentleman hired to the E3 position, they were still awarded those positions. When Ms. Gibson did not check every box, when she didn't have a journeyman's license, even though experience could be substituted, when she did not check every box, MGM went outside. Contrary to the collective bargaining agreement that specifies... Are you saying that she had the relevant comparable experience to compensate for the lack of a journeyman's license? Yes, Your Honor. We would submit that the record does show that she had that relevant experience. Your light is on and you'll have your full rebuttal time. All right. Thank you very much, Your Honors. Good morning, Your Honors. May it please the Court. Curtis Wilder on behalf of MGM Grand Detroit. MGM requests that the Court affirm the District Court order granting summary disposition in favor of MGM. And to answer some of the Court's questions. First, there's an inherent authority of the District Court to reconsider an interlocutory order that there's a change of law. And of course, the Court in this case saw the McDaniel's case, reconsidered the matter and felt that this case was very close to McDaniel and therefore reversed its decision and issued... I just found that somewhat strange. I mean, this is an area of law where it's... I mean, the legal principles are well established. Yes. And it's just always going to be fact-bound application. So the facts are really much more relevant than the law. I don't know why this later unpublished decision would lead the District Court to change its mind. I don't know. Can you help me out there? Yes. Do you really think it's so factually analogous that it should have led to this flip? The issue here is pretext. In this case, it's... Was there... Were there facts upon which the employer could rely to make the decision? Were those decisions actually... Or were those facts actually the motivating factor behind the decision? And objectively, could those facts be used to make that decision? And in each case, MGM had facts which they relied upon, which supported the decisions that they made. For the E-1 position, Weldon, for example, was in the hotel as a trainee at the time this position came available. He had experience in the hotel guest rooms. He understood Bartek, Next TV, and ENCOM, the entertainment and the phone systems within the hotel rooms. And specifically, he had experience dealing with the hotel guests, which is a critical part of the decision-making process in deciding Weldon versus the lateral transfer for the plaintiff. Significantly, the plaintiff was at MGM Grand from 2002 to 2015 when the first position was available, the lateral transfer. And she took no additional courses. And yet, Weldon was seeking a certification in HVAC. Weldon was taking refrigeration courses. He ultimately got a boiler operator's license. He was continually taking advanced training to prepare himself for future opportunities. And counsel indicated that the plaintiff was seeking to improve herself by doing a lateral position. But she didn't show that in her conduct throughout the entirety of her time at MGM Grand. In fact, Lewis testified that he even offered to allow her to shadow when she wasn't on the hotel so she could get the kind of experience that Weldon was getting, and she declined to do that. So with regard to the E1 position, Weldon clearly had experience within the hotel that justified the decision to hire him. With regard to the E2 position, in fact, the plaintiff did admit in her deposition that Weldon was more qualified than she. She said she had the qualifications, but she agreed that Weldon was more qualified. And on those facts, MGM was certainly entitled to rely upon Weldon's experience in the hotel and his greater qualifications to choose him. With regard to the juryman's position, the record does show that in each instance, MGM Grand hired for E3 positions people who had juryman's licenses. Your own policy, though, or the collective bargaining agreement did suggest that a number of years of experience could serve as a fill-in for a juryman's license, and I don't think you would dispute that she had the number of years of experience, so how does that play into whether there's enough evidence for pretext? If you look at the requirements for the E2 position, that could also require juryman's license, but MGM could rely on years of experience, and that's what they did for the E2 positions. For the E3 positions, the record is clear. They never hired anybody for that position that didn't have a juryman's license. So even though they have, I think the exception applied for E3, too, didn't it? It did not in the posting. In the posting for E2, experience was relevant, but for the posting for E3, experience was not relevant. You had to have a juryman's license. So, okay, setting aside the posting, is it the, I thought there was something in the record, either the collective bargaining agreement or something that said that you could have a fill-in, but you're basically saying that there is undisputed evidence that even though that was what it said, it was left to your discretion and you always required a juryman's license. The collective bargaining agreement also said that the employer could decide if there was specific requirement that they would have for one particular position, and they did for the juryman's license or for the juryman's position, but not for the E2 positions. The bottom line, if you look at each of these positions, male applicants were also passed over in place of Weldon and in place of Davis. And some of those were internal candidates who had qualifications for the position. So there's just no evidence on the record, and I think the court, in looking at Daniel's and looking at the fact that this was an exercise of business judgment on the part of MGM Grand, looking at the fact that sometimes you have people who might be on equal footing. For example, on the E2 position, neither candidate, neither the plaintiff or Weldon had all of the qualifications. But Weldon was actually training in two of the qualifications he didn't have. And that's a reasonable response for MGM to hire. What do you make of the big picture point, so setting aside any particular position, the big picture point that Lewis and Valentine, the people relevant here, hadn't, I mean, I think they maybe overstated things in suggesting that they had never promoted women, but it seems quite clear that the promotions of women were pretty limited. Lewis wasn't even there at the time of the collective bargaining agreement in 2011 or 2012. So with respect to the reference that somebody else had to intervene to promote women at that time, well, Lewis wasn't part of that. The record is clear that Lewis and Valentine both were involved in hiring women. Valentine was involved in the promotion of Winton from E1 to E2 to E3. He participated in all of those promotional decisions. And the fact is clear that women were also offered positions by both Lewis and Valentine and they, in some cases, declined to take the positions. So there's just nothing on the record to show that they had any gender animus. I have nothing further unless the Court has questions, I'm happy to answer them. Thank you, sir. Thank you. Ms. Cortese, your rebuttal. Thank you. Thank you, Your Honors. Your Honor, first to respond, as we've set forth in our brief, McDaniels is not controlling. First of all, McDaniels was an unpublished decision. Secondly, in McDaniels, the plaintiff conceded and admitted in her deposition that she had not been qualified for the positions. That is in contrast to this case where Ms. Gibson always maintained that she was in fact highly qualified for the positions that she suffered. With regards to the assertion that Mr. Weldon was more qualified for the E1 position because he had interacted with hotel guests, Ms. Gibson established in the record and in her deposition that as part of her job duties, near 16 years of experience working in the casino, that she would have interacted with casino guests. It is presumably the level of hospitality that you would offer to a hotel guest or a casino guest. How you would interact with that member of the public would not change based on whether your position happens to be assigned to the casino or happens to be assigned to the hotel. With regards to the issue on taking courses, etc., the record establishes that in 2002, Ms. Gibson did obtain some of the necessary certifications that she needed to do her job, that she did avail herself of educational opportunities. And particularly when you weigh out with regards to the E1 and the E2, when you take somebody with 16 years of experience and you weigh that against somebody with six months' experience, ten months' experience, particularly when the collective bargaining agreement says that when qualifications are equal, the tiebreaker should be the more senior person, that is sufficient to create a genuine issue of material fact regarding whether the denial of these two positions to Ms. Gibson was in fact based on her gender. With regards to the assertion by MGM that with regards to the E3 position, that it required a journeyman's license, again, that goes back to what I had said earlier, where when it came to Ms. Gibson, when it came to a female, she had to have every requirement, she had to check every box, the record reflected, and we cited this in our briefs, that previously for a gentleman named Walker, that MGM had excused the requirement of a Michigan's journeyman's license and brought him in even though he had an out-of-state license. So again, when it came to the male, a reasonable jury could find that when it came to the male and say, well, maybe you don't have this qualification, but you have this one. Maybe you don't have a journeyman's license, but you have experience. Maybe you're not from internal, but you have this. But that when it came to Ms. Gibson, they required her to check every box and in fact favored male employees either with less experience or from outside the MGM system. And we maintain, as originally found by the district court, that it is sufficient to show discrimination based on gender. Thank you. Thank you. The matter is submitted and we will give you an opinion in due course.